300 Ga. 869
FINAL COPY

S16G1245.  YORK et al. v. RES-GA LJY, LLC.

PETERSON, Justice.

Last year, we held that compliance with OCGA § 44-14-161, Georgia's confirmation statute, "is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted, but a guarantor retains the contractual ability to waive the condition precedent requirement."  PNC Bank, Nat'l Ass'n v. Smith, 298 Ga. 818, 824 (3) (b) (785 SE2d 505) (2016). We granted certiorari in this case to consider additional questions regarding creditors' ability to pursue deficiency actions against guarantors.   We conclude that Jim L. York and John A. Drillot ("the Guarantors") waived any defense based on the failure of creditor RES-GA LJY, LLC ("RES-GA") to confirm the relevant foreclosure sales, and thus we affirm the Court of Appeals decision that upheld deficiency judgments against them.

1.    *Background*

The relevant facts are undisputed.  The Community Bank loaned money to several entities ("the Borrowers") over the course of several years.  The

Borrowers executed five promissory notes, granting the bank a security interest in real estate located in three different counties. To further secure the loans, the Guarantors signed commercial guaranties ("the Guaranties") in which they guaranteed full payment of the notes.[1] The Guaranties each included an identical[2] waiver provision ("the Waiver"), which provides in relevant part:

> Guarantor also waives any and all rights or defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (A) the provisions of O.C.G.A. Section 10-7-24 concerning Guarantor's right to require Lender to take action against Borrower or any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; . . . or (F) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness.

The promissory notes and Guaranties were later assigned to RES-GA.

In 2011, RES-GA foreclosed on and bought the properties that were serving as collateral. It then filed confirmation actions in the three counties in

---

[1] Drillot guaranteed the indebtedness of only one of the notes.

[2] Earlier versions of the Guaranties as to one of the Borrowers contained slightly different waiver language. York later signed new Guaranties as to this Borrower, however, containing the language cited in the main text of this opinion.

which the secured properties were located. In each instance, the trial court entered an order refusing to confirm the sale, finding that RES-GA had failed to prove that it obtained the fair market value of the property in question, and refusing to allow a resale. RES-GA appealed two of those orders, and the Court of Appeals affirmed in each case. See RES-GA LJY, LLC v. South Crestview Drive, LLC, 326 Ga. App. XXIII (Case No. A13A1810) (March 10, 2014) (unpublished); RES-GA LJY, LLC v. Y.D.I., Inc., 322 Ga. App. 607 (745 SE2d 820) (2013).

In July 2013, the Court of Appeals issued its decision in HWA Properties, Inc. v. Community & Southern Bank, 322 Ga. App. 877 (746 SE2d 609) (2013), finding that a creditor's failure to obtain a valid confirmation of a foreclosure sale[3] did not impair its authority to obtain a deficiency judgment against the loan's personal guarantor. Id. at 885-888 (2) (b). RES-GA then filed this deficiency action against the Guarantors. The trial court denied the Guarantors' motion for summary judgment and granted summary judgment to RES-GA, concluding that the Guarantors had waived any defense based on RES-GA's

---

[3] In HWA Properties, the lender's successor-in-interest obtained an order confirming the foreclosure sale, but the Court of Appeals reversed that order while the appeal of the deficiency judgment was pending. See 322 Ga. App. at 879-880.

failure to confirm the sales. At RES-GA's suggestion, the trial court calculated RES-GA's damages as the difference between the amount due on the notes and the higher values of each property as contended by the Guarantors' appraisers in testimony submitted during the confirmation proceedings. In all, the trial court entered judgment against York for $12,381,103.09, plus $44,432.22 in attorney fees, and entered judgment against Drillot in the amount of $1,505,772.10.

The Guarantors appealed to the Court of Appeals, which affirmed. York v. RES-GA LJY, LLC, 336 Ga. App. 253 (784 SE2d 96) (2016). Pointing to our decision in PNC Bank, the panel noted that the confirmation requirement of OCGA § 44-14-161 (a) can be waived by a guarantor. Id. at 255. The panel rejected the Guarantors' argument that, because a defense arising out of OCGA § 44-14-161 (a) is not "based on suretyship," the Waiver did not encompass such a defense. Id. at 255-256. The panel concluded that the Guaranties are themselves contracts of suretyship and that the Waiver explicitly applies to defenses arising from laws that prevent a lender from pursuing a deficiency claim against a guarantor. Id. We granted the Guarantors' petition for certiorari and directed the parties to address (1) whether the Court of Appeals erred in its

4

determination that the Guarantors waived their rights under OCGA § 44-14-161 (a); and (2) whether RES-GA retained the power to pursue a deficiency judgment against the Guarantors after RES-GA sought and was denied judicial confirmation under the statute.

2. *The Guarantors waived their rights under OCGA § 44-14-161 (a)*

In Georgia, guaranty agreements are to be construed strictly, "and the surety's liability will not be extended by implication or interpretation." OCGA § 10-7-3. As with other contracts, the construction of a guaranty agreement is a question of law that we review de novo. United Gov't of Athens-Clarke Cty. v. Stiles Apts., 295 Ga. 829, 832 (1) (764 SE2d 403) (2014). The Guarantors argue that the Waiver does not encompass just any defense in law and equity, but only those "rights or defenses based on suretyship or impairment of collateral[.]" And they argue that their rights under OCGA § 44-14-161 do not fall within the meaning of that provision. We agree with the Guarantors that the Waiver is not as broad as RES-GA says it is, as the Waiver's reference in subsection (F) to "any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness" cannot expand the meaning of the Waiver beyond the other types of rights or defenses specifically

5

named.

> [W]hen a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis (i.e., of the same kind or class) with the things specifically named, unless, of course, there is something to show that a wider sense was intended.

Ctr. for a Sustainable Coast v. Coastal Marshlands Prot. Comm., 284 Ga. 736, 737-738 (1) (670 SE2d 429) (2008) (citation omitted); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199-213 (2012).  But we do not agree with the Guarantors that their rights under OCGA § 44-14-161 are not "rights or defenses based on suretyship or impairment of collateral[.]"

Georgia law extends to guarantors certain protections from post-foreclosure deficiency actions, and there is no distinction between sureties and guarantors relevant to this case.  OCGA § 10-7-1 defines a "contract of

6

suretyship or guaranty" as "one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance remaining bound therefor."  "There shall be no distinction between contracts of suretyship and guaranty."[4]  Id.  OCGA § 44-14-161 (a) provides:

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

Georgia law extends to guarantors the right to insist on compliance with OCGA § 44-14-161 (a) as a condition precedent to the lender's ability to pursue the guarantor for a post-foreclosure deficiency.  PNC Bank, 298 Ga. at 819-820 (2).

The defense OCGA § 44-14-161 (a) offers guarantors is a defense "based on suretyship."  OCGA § 44-14-161 (a) does not provide a defense to litigation

_____

[4] The Guarantors insist that their argument does not rest on any distinction between the two.

7

generally; rather, it provides a defense that is "based on" the party's status as a guarantor. Only a defendant defending a deficiency action can invoke OCGA § 44-14-161 as a defense to litigation. As a practical matter, that includes only borrowers and their guarantors and sureties. The Guarantors argue that the confirmation requirement of OCGA § 44-14-161 is not a right or defense "based on suretyship or impairment of collateral" because it is available to both borrowers and guarantors. But the Waiver here clearly is not limited to rights or defenses exclusively held by guarantors or other sureties, as subsection (A) expressly includes rights or defenses under "one action" or "anti-deficiency" laws, which are not unique to sureties or guarantors (and, in some states, may be available to only borrowers, not guarantors). See Bank Mut. v. S.J. Boyer Constr., Inc., 785 NW2d 462, 479 (Wis. 2010) ("Although states have a wide variety of anti-deficiency legislation with a wide variety of statutory language, courts have generally refused to extend to guarantors the protection of such statutes.").

The Guarantors also argue that the confirmation requirement of OCGA § 44-14-161 is not a defense "based on suretyship or impairment of collateral" because those terms encompass only "the traditional concept of suretyship

8

defenses recognized at common law and by statute[.]" They argue that "suretyship defenses" is a term of art for statutory defenses codified at OCGA §§ 10-7-20 to 10-7-27 and OCGA § 11-3-605 (c)-(f). It is true that these Code sections afford rights and defenses to sureties. But the Guarantors offer no compelling argument or authority that these are the only rights and defenses that can constitute "rights or defenses based on suretyship[.]" The Guarantors note that OCGA § 11-3-605 (i) provides that "[a] party is not discharged under [that] Code section if . . . the instrument or a separate agreement of the party provides for waiver of discharge under [that] Code section either specifically or by general language indicating that parties waive defenses based on suretyship or impairment of collateral[,]" language echoed by the waiver provision in this case. But that provision does not say that such language waives *only* the rights afforded sureties under that Code section; indeed, such an argument would be at odds with the Guarantors' own position that the rights codified at OCGA §§ 10-7-20 to 10-7-27 also are "suretyship defenses." Similarly, the Guarantors cite a treatise to the effect that rights of the surety to discharge when the obligee and principal obligor agree to modifications of the obligations between them without the consent of the surety "are commonly referred to as suretyship

9

defenses." William H. Danne, Jr. et al., 5 Ga. Jur. UCC § 4:252 (updated March 2017). But, again, this commentary does not say that nothing else could be considered a defense "based on suretyship."[5]

The Waiver's explicit inclusion of rights and defenses under "one action" and "anti-deficiency" laws confirms that the Waiver includes a defense under OCGA § 44-14-161. The Guarantors argue that the Waiver's reference in subsection (A) to "one action" or "anti-deficiency" laws does not include OCGA

---

[5] On this point, the Guarantors also cite inapposite cases from other jurisdictions. In Fifth Third Bank v. MacLaren, No. 3:08-CV-02819, 2009 U.S. Dist. LEXIS 96924, 2009 WL 3271364 (N.D. Ohio Oct. 9, 2009), a waiver specifically referenced "all suretyship defenses, including but not limited to defenses based upon impairment of collateral and all suretyship defenses described in Section 3-605 of the Uniform Commercial Code as revised in 1990." Id. at *27-28. The district court judge found that waiver did not encompass the defendants' assertion of a defense of satisfaction, noting that the defendants were claiming satisfaction of a debt owed personally, rather than the debt of another. Id. at *28. And two California appellate decisions, Cathay Bank v. Lee, 18 Cal. Rptr. 2d 420 (Cal. Ct. App. 1993), and Indusco Mgmt. v. Robertson, 114 Cal. Rptr. 47 (Cal. Ct. App. 1974), offer no persuasive support for the proposition that rights such as those created by OCGA § 44-14-161 are not "based on suretyship or impairment of collateral." Although Indusco Mgmt. held that language waiving "all suretyship defenses and defenses in the nature thereof" did not encompass a defense based on California's anti-deficiency statute, a close reading of the decisions in both cases reveals that the Indusco court did not hold that the anti-deficiency statute did not meet the definition of a "suretyship defense" but instead held that the waiver was not sufficiently specific. See Cathay Bank, 18 Cal. Rptr. 2d at 423 ("The language in Indusco seems very general indeed, so we can easily understand why it failed to pass muster."). Similarly, in Cathay Bank, the court rejected a waiver argument on the basis that the waiver language in question was either too broad or too difficult for an average person to understand. Id. at 425. Here, the waiver specifically mentions "anti-deficiency" laws.

10

§ 44-14-161. Beyond its reference to OCGA § 10-7-24,[6] they say, subsection (A) waives merely the guarantor's rights under any law that requires completion of a foreclosure action prior to bringing an action against a guarantor — a requirement that exists in some states, but not in Georgia, they say. They note that the Waiver provisions here are "boilerplate" provisions used by lenders in other states. See, e.g., Ariz. Bank & Trust v. James R. Barrons Trust, 351 P3d 1099, 1101 (Ariz. Ct. App. 2015) (citing waiver language nearly identical to that of subsection (A) of Waiver). It is true that OCGA § 44-14-161 does not use the term "one action" or "anti-deficiency," and it appears we have not used either of those terms to describe it or any other Georgia statute.[7] But common legal

---

[6] OCGA § 10-7-24 provides in part:
Any surety, guarantor, or endorser, at any time after the debt on which he or she is liable becomes due, may give notice in writing to the creditor, his or her agent, or any person having possession or control of the obligation, to proceed to collect the debt from the principal or any one of the several principals liable therefor; and, if the creditor or holder refuses or fails to commence an action for the space of three months after such notice (the principal being within the jurisdiction of this state), the endorser, guarantor, or surety giving the notice, as well as all subsequent endorsers and all cosureties, shall be discharged. . . .

[7] The United States District Court for the Northern District of Illinois has rejected the notion that OCGA § 44-14-161 does not qualify as an "anti-deficiency statute." See GE Bus. Fin. Servs. v. Schiffman, No. 09 C 4368, 2010 U.S. Dist. LEXIS 7167, at *18 (N.D. Ill. Jan. 27, 2010).

11

usage of the term "anti-deficiency" shows that OCGA § 44-14-161 falls within the meaning of that term. Black's Law Dictionary describes such statutes as those "enacted to limit the rights of secured creditors to recover in excess of the security." Black's Law Dictionary 1038 (10th ed. 2014). The term "anti-deficiency" is used to describe a variety of statutes that limit creditors' ability to seek a deficiency judgment, including those that forbid post-foreclosure deficiency actions altogether, those that forbid deficiency actions after only non-judicial sales, and those that require court confirmation of a sale prior to a deficiency judgment. See, e.g., Connelly v. Derwinski, 961 F2d 129, 130 (9th Cir. 1992) (using term "anti-deficiency law" to describe statutes of several states); Bank Mut., 785 NW2d at 478 n.16 (describing Wisconsin law precluding deficiency judgment absent court confirmation of sale as an "anti-deficiency provision"). Our understanding of the terms "one action" and "anti-deficiency" is further informed by the additional language of subsection (A) to the effect that the Waiver extends to "any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale[.]" Here, OCGA § 44-14-161

12

certainly fits the general definition of an anti-deficiency law: It limits a secured creditor's right to recover in excess of the security after foreclosure to those instances in which the creditor has obtained confirmation of the sale, specifically stating that no action may be taken to obtain a deficiency judgment absent that prerequisite.[8]

Finally, the Guarantors argue that RES-GA's own actions in pursuing confirmation demonstrate its understanding that in signing the guaranties, York and Drillot did not waive the requirements of the confirmation statute. They cite case law to the effect that the parties' interpretation of a contract is entitled to "great, if not controlling, influence." Anderson v. Anderson, 274 Ga. 224, 226 (2) (552 SE2d 801) (2001); see also Clark v. AgGeorgia Farm Credit ACA, 333 Ga. App. 73, 79 (1) (775 SE2d 557) (2015). But RES-GA's decision to seek confirmation preceded the Court of Appeals' opinion in HWA Properties. See

---

[8] The Guarantors argue in a supplemental brief filed after oral argument that even if OCGA § 44-14-161 is an "anti-deficiency" law, the reference to such a statute does not mean they have waived their own rights or defenses under the statute, but only that they have waived any *suretyship defenses* "arising by reason of" the operation of that statute — i.e., "the right to assert the suretyship defense of impairment of recourse against the borrower caused by the lender's failure to comply with an anti-deficiency law." This argument is not materially different from the Guarantors' other arguments and fails for the reasons set forth above.

13

322 Ga. App. at 885-888 (2) (b) (holding that waiver allowed deficiency judgment against guarantor notwithstanding creditor's failure to obtain a valid confirmation). Even after that decision — and perhaps because of it — there was some uncertainty, as evidenced by a federal court's certification of questions to this Court in PNC Bank, as to whether guarantors could waive the requirements of OCGA § 44-14-161, assuming those requirements applied to guarantors at all. 298 Ga. at 818.[9] In the face of this uncertainty, RES-GA's election to cover its bases by seeking confirmation of the sales offers us little help in interpreting the contract, particularly given our conclusion that the Guarantors' proposed interpretation is contrary to the contractual language. That language makes clear that the Guarantors waived any defenses under an anti-deficiency law such as OCGA § 44-14-161, to the extent that such a waiver is permitted by law. In PNC Bank, we held that such a waiver is permitted. 298 Ga. at 824 (3) (b). As such, we hold here that the Guarantors waived any

---

[9] The federal court order certifying the questions indicated that, in the light of previous unidentified decisions to the effect that conditions precedent cannot be waived, the Court of Appeals decision in HWA Properties, as well as its subsequent decision in Community & Southern Bank v. DCB Investments, LLC, 328 Ga. App. 605 (760 SE2d 210) (2014), rendered the state of the law unclear. See PNC Bank v. Smith, No. 1:14-CV-03368-ELR, 2015 WL 12030507, at *2, 2015 U.S. Dist. LEXIS 180822, at *4 (N.D. Ga. June 3, 2015).

14

defense based on RES-GA's failure to confirm the relevant foreclosure sales.

3.     *The Guarantors' other arguments seeking to avoid application of the Waiver also fail.*

The Guarantors argue that RES-GA is making an impermissible collateral attack on the confirmation judgments. A trial court generally lacks jurisdiction over an action that attempts to attack a prior civil judgment (not void on its face) in a court other than the one in which it was rendered. See OCGA § 9-11-60; Ramchandani v. State Bank & Trust Co., 324 Ga. App. 235, 238 (1) (749 SE2d 797) (2013). And subject matter jurisdiction cannot be waived. See Bolden v. Barton, 278 Ga. 831, 832 (1) (607 SE2d 889) (2005). But this action does not amount to an attack on the orders denying confirmation or the conclusions contained therein. That those orders denied confirmation is not relevant to this action, given our finding that the Guarantors have waived any defense based on RES-GA's failure to obtain confirmation. And, as explained below, the specific findings contained in those orders are relevant here only as to the extent of RES-GA's damages.

The Guarantors appear to argue that, under the doctrine of collateral estoppel or the doctrine of election of remedies, the judgments of the courts that

denied confirmation preclude RES-GA from making requisite showings for this deficiency action. "The doctrine of collateral estoppel, also known as issue preclusion, prevents the re-litigation of an issue actually litigated and adjudicated on the merits between the same parties or their privies." Simmons v. State, 276 Ga. 525, 527 (579 SE2d 735) (2003). Under the doctrine of election of remedies, a litigant cannot pursue a remedy inconsistent with a remedy the litigant sought under a prior proceeding. See Beard v. Beard, 197 Ga. 487, 490-491 (29 SE2d 595) (1944). By pursuing the statutory remedy of confirmation to conclusion, the Guarantors argue, RES-GA is bound by the final judgments that establish that RES-GA (1) failed to obtain the fair market value of any of the real property collateral when sold at foreclosure and (2) is not permitted to cure its failures by reselling any of the real property at another foreclosure sale. But — putting aside the requirements of OCGA § 44-14-161, which the Guarantors have waived — these factual findings would not preclude RES-GA from seeking a deficiency altogether. See PNC Bank, 298 Ga. at 820 (3) n.6 (compliance with confirmation statute "is in the nature of an element of [a deficiency] claim, which if not pled and proved may result in the lender losing the lawsuit but which may normally be waived"). The courts that denied

16

confirmation found that RES-GA did not meet its burden to show that the foreclosure sales garnered fair market value. Although that may be relevant to the amount of damages that RES-GA may secure — an issue the trial judge took into account when calculating the award in this case — that issue is outside the scope of both the Court of Appeals ruling and the certiorari questions propounded in this case. We therefore express no opinion on it. And there is nothing inconsistent about the remedy sought by RES-GA in the confirmation proceedings and the remedy sought here; in both cases, the remedy ultimately sought is to obtain a deficiency judgment against the Guarantors.[10]

Judgment affirmed. Hines, C. J., Melton, P. J., Benham, Hunstein, Nahmias, Blackwell, and Grant, JJ., and Judge William Travis Sakrison concur. Boggs, J., disqualified.

Decided April 17, 2017.

Certiorari to the Court of Appeals of Georgia — 336 Ga. App. 253.

Andersen, Tate & Carr, Thomas T. Tate, Elizabeth L. Clack-Freeman, R. Matthew Reeves, Graham K. Brantley, Jonathan S. Tonge, for appellants.

---

[10] In any event, we note that the Guarantors did not argue before the trial court that the doctrine of election of remedies prevented RES-GA from obtaining a deficiency judgment.

Deutchman Law, Jill A. Deutchman; Hartman Simons & Wood , Chelsea L. Dennis; Morris, Manning & Martin, Lisa M. Wolgast, Frank W. Deborde, for appellee.