[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11998
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-00038-WTM-GRS


THE COASTAL BANK,

Plaintiff -
Counter Defendant,

AMERIS BANK,

Plaintiff - Appellee,

versus

G. GLEN MARTIN,
ARTHUR G. SCANLAN,

Defendants -
Counter Claimants -
Appellants.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 20, 2017)

Before HULL, WILSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

G. Glen Martin and Arthur G. Scanlan (collectively, "Defendants") were investors in Sterling Bluff Investors, LLC and signed personal guaranties for a promissory note executed by the company with The Coastal Bank—which later merged with the plaintiff in this case, Ameris Bank ("Ameris")—to buy real property.[1] After Sterling Bluff Investors defaulted on its payments, Ameris foreclosed on the property and held a public foreclosure sale. At the sale, Ameris was the highest bidder and purchased the property.

In addition to foreclosing on the property, Ameris sought to recover the difference between the purchase price of the property at the foreclosure sale and the amount owed on the promissory note, an amount which is commonly referred to as the deficiency. To recover this deficiency, Ameris filed the present lawsuit

---

[1]  Although The Coastal Bank and Ameris did not merge until after The Coastal Bank had initiated this lawsuit, Ameris is now the plaintiff in this action and any reference to Ameris also references any actions taken by The Coastal Bank.

against Defendants, seeking to enforce the personal guaranties and recover the deficiency remaining after the foreclosure sale. Ameris moved for summary judgment, arguing that, per the terms of their guaranties, Ameris was entitled to recover this deficiency amount. Defendants countered that Ameris could not obtain a deficiency judgment or establish damages because the foreclosure sale price had not been confirmed by a court as constituting the fair market value of the property, which Georgia law generally requires as a prerequisite to obtaining a deficiency judgment. Because the guaranties include a waiver provision that expressly waives any defenses, including the statutory confirmation requirement, the district court rejected Defendants' argument and granted summary judgment in favor of Ameris.

Defendants now appeal, asserting the same grounds they raised below before the district court. But because we agree with the district court that Defendants' guaranties waive the confirmation requirement prescribed by Georgia law, we **AFFIRM**. Ameris also moves to dismiss the appeal as frivolous and requests sanctions. We agree that Defendants' appeal was frivolous and that costs and reasonable attorneys' fees associated with the appeal should be awarded. Accordingly, we **REMAND** to the district court for a determination of these amounts.

3

## I.    <u>Background</u>

In July 2008, Sterling Bluff Investors, LLC executed a promissory note with Ameris for $6,250,000, which was secured by the real property the company planned to purchase with the proceeds.  At the same time, the company's investors, including Defendants, signed personal guaranties for the note.  Martin and Scanlan guaranteed $1,562,500 and $1,000,000 in principal, respectively, plus interest and costs.  Apart from different liability limits, the two guaranties are identical. Importantly, both contain a waiver of defenses provision that states that Defendants:

> waive[ ] any and all defenses, claims and discharges of [Sterling Bluff Investors], or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full.  Without limiting the generality of the foregoing, the [Defendants] will not assert, plead or enforce against [Ameris] any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, [i]ncapacity, minority, usury, illegality, or unenforceability which may be available to [Sterling Bluff Investors] or any other person liable in respect of any Indebtedness, or any setoff available against [Ameris] to [Sterling Bluff Investors] or any such other person, whether or not on account of a related transaction.

The same section also notes that, in the event of foreclosure on the collateral, Defendants will be liable for any deficiency, even if that deficiency would be discharged by statute or judicial decision.  Specifically, the guaranties state that:

> [Defendants] expressly agree[ ] that the [Defendants] shall be and remain <u>liable</u>, to the fullest extent permitted by applicable law, <u>for any deficiency remaining after foreclosure</u> of any mortgage or security interest securing

4

Indebtedness, <u>whether or not the liability</u> of [Sterling Bluff Investors] or any other obligor for such deficiency <u>is discharged pursuant to statute or judicial decision</u>. The [Defendants] shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though [Sterling Bluff Investors'] obligations had not been discharged.

(Emphasis added).

Sterling Bluff Investors subsequently acquired seventy-two lots and fifty resident memberships in The Ford Plantation subdivision that served as collateral on the note. And, in 2011, Ameris and Sterling Bluff Investors renewed the note and updated the principal balance to $5,625,000.

In March 2013, Sterling Bluff Investors defaulted on its payments to Ameris. In response, Ameris notified the company of its default and accelerated the debt. After Sterling Bluff Investors unsuccessfully attempted to file bankruptcy, Ameris foreclosed on the collateral and purchased the property for $3,800,000 at a public foreclosure sale held in December 2014. The $3,800,000 was applied to Sterling Bluff Investors' outstanding debt, which left a deficiency of roughly $2,500,000. Ameris filed in Georgia state court for confirmation that the sale price reflected the fair market value of the property, but confirmation still has not occurred.[2]

---

[2] The parties' filings in the district court state that the confirmation hearing was scheduled for June 2015, but neither the record nor the parties' briefs indicate whether this hearing has ever occurred.

As noted, the district court granted Ameris's motion for summary judgment in its action to collect from Defendants the deficiency amount. Defendants now appeal.[3]

Ameris then moved to dismiss the appeal as frivolous and sanction Defendants under Federal Rule of Appellate Procedure 38.

## II.    STANDARD OF REVIEW

We have jurisdiction to hear this appeal because it arises from a final appealable order. 28 U.S.C. § 1291. "'We review a district court's grant of summary judgment *de novo*,' viewing all of the facts in the record in the light most favorable to the non-movant." *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015) (quoting *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007)).[4] "Summary judgment is proper where 'there is no genuine dispute as

---

[3] This is actually Defendants' second appeal in this case. Defendants appealed the district court's initial order granting summary judgment to Ameris. We dismissed that appeal for lack of jurisdiction because the district court's order was not a final appealable order as it left damages and other relief undetermined. *Ameris Bank v. Martin*, No. 15-14285-GG (11th Cir. Nov. 13, 2015).

[4] Defendants state in their briefing that they are appealing from both the district court's summary judgment order and its rulings on Defendants' postjudgment motions to alter or amend the judgment. But Defendants' briefs fail to specify which exact ruling(s) or order(s) are being challenged, though their analysis focuses on the district court's reasoning in its summary judgment order. Ultimately, this does not matter because the district court's denial of Defendants' motions to amend or alter the judgment would also be reviewed *de novo* as Defendants' arguments turn solely on questions of law. *See Barnes v. Broward Cty. Sheriff's Office*, 190 F.3d 1274, 1276–77 (11th Cir. 1999).

6

to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). And, because this is a diversity action, we apply Georgia law. *See Nebula Glass Int'l., Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1212 (11th Cir. 2006). In doing so, we are bound by the rulings of the highest Georgia state court when addressing state law issues. *See Veale v. Citibank, F.S.B.*, 85 F.3d 577, 580 (11th Cir. 1996).

## III.   Discussion

### A.   Defendants' Appeal

Defendants challenge both the grant of summary judgment in favor of Ameris and the district court's reliance on an affidavit from Ameris setting out the damages. On the issue of summary judgment, Defendants argue (1) that Ameris was required to confirm the sale price of the collateral to obtain a deficiency judgment under O.C.G.A. § 44-14-161(a), (2) that the district court misinterpreted Georgia law when it held that the guaranties waived the confirmation requirement, (3) that the guaranties' waiver of the confirmation requirement violates O.C.G.A. § 44-14-161(a), (4) that the guaranties' waiver of the confirmation requirement is

7

against Georgia public policy,  and (5) that the guaranties' waiver is so vague as to be unenforceable.[5]

The district court correctly held that Defendants' arguments are squarely foreclosed by Georgia law.  The district court relied on a decision by the Georgia Court of Appeals, which held that so long as a party has waived its right to this defense, "failure to obtain a valid confirmation of the foreclosure sale, pursuant to O.C.G.A. § 44-14-161, does not impair [a creditor's] authority to collect the difference between the amount due on the note and the foreclosure sale proceeds from [a debtor] based upon his personal guaranty."  *HWA Properties, Inc. v. Community & Southern Bank*, 322 Ga. App. 877, 886 (2013).  In *HWA Properties*, the court concluded that the guarantor had waived this defense in the case before it. And the waiver terms in *HWA Properties* are virtually, if not entirely, identical to the waiver terms here.  *Id.* at 886–87; *see also Cmty. & S. Bank v. DCB Investments, LLC*, 328 Ga. App. 605 (2014) (holding that the confirmation requirement was waived by terms indistinguishable from the terms of the waiver provision in Defendants' guaranties).

---

[5]  Defendants' last argument that the waiver provision's terms are so vague as to be unenforceable was never presented to the district court.  Thus, it was not properly preserved for appeal.  *See Cont'l Tech. Services, Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991) ("An argument not made is waived, whether based on federal law, the law of the forum state, or the law of a foreign state.") (citing *Pruitt v. P.P.G. Indus., Inc.*, 895 F.2d 734 (11th Cir. 1990)).  Even if considered, it is not persuasive.

8

Lest there be uncertainty whether the intermediate appellate decision in *HWA Properties* constitutes good law, the Georgia Supreme Court removed any doubt with its subsequent decision in *PNC Bank, Nat'l Ass'n v. Smith*, 298 Ga 818 (2016).  In that case, the Georgia Supreme Court addressed whether O.C.G.A. § 44-14-161(a)[6] prohibits a creditor from obtaining a deficiency judgment against a guarantor of a note secured by real property when there has been no judicial confirmation that the foreclosure sale price reflects the fair market value of the property.  The court agreed that, per the statute and as a general rule, the need to comply with § 44-14-161(a)'s requirement of judicial confirmation applies equally to a debtor and to the guarantor of his debt:  "Compliance with the requirements contained in OCGA § 44-14-161 is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted."  *Id.* at 819.  But when it came to the question whether one can waive the requirement of

---

[6]  The statute states:

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

the statute that the foreclosure sale must be judicially confirmed, the court

concluded that a debtor could not waive this protection, but a guarantor could.[7]

Specifically, the court reasoned that through its amendment of the pertinent statute,

the General Assembly had, as to a debtor, prohibited any waiver of the protections

of this confirmation statute, and thus judicial confirmation is a prerequisite to

pursuit of a deficiency judgment against the debtor. *Id.* at 823.  Georgia law,

however, does not prohibit waiver of this protection by a guarantor of the debt.

"This no-waiver protection . . . [is] limited to original borrowers and current

owners, not guarantors." *Id.*  Thus, a guarantor could waive the protections of

§ 44-14-161, and when a guarantor does so, the absence of judicial confirmation of

the foreclosure sale does not bar the holder of the note from seeking a deficiency

judgment against the guarantor. *Id.* at 824.

As noted, the waiver language in the guaranty agreement is virtually

identical to language in agreements that the Georgia appellate courts have held to

constitute a waiver of the right to insist on judicial confirmation of a foreclosure

sale as a prerequisite to seeking a deficiency judgment. Accordingly, we agree with

the district court that Defendants did waive their right to this protection.

---

[7] *But see PNC Bank*, 298 Ga. at 825 (Nahmias concurring) (expressing concern whether an argument could be made that a debtor could also waive the protections of the statute).

10

On the issue of damages, Defendants repeat this same argument, insisting that the district court could not establish damages unless the foreclosure sale price was confirmed as being the property's fair market value.  But, again, Georgia law provides otherwise.  Rejecting the guarantor's argument that recognition of a guarantor's ability to waive § 44-14-161 would eviscerate the important protections of that statute, the Supreme Court articulated a distinction between debtors and guarantors.  Specifically, guarantors are "most often, volunteers to the transactions.  As such, guarantors face neither the same disparity of bargaining power nor the same type of risk as borrowers."  *Id.* at 822.  That being so, "freedom of contract is sacrosanct, and that freedom should not be limited absent some important public policy reason."  *Id.*  Finding no such important policy reason, the court rejected the public policy argument of the guarantor before it.

Because "[w]e, of course, never second guess state supreme court decisions about state law," *Patterson v. CitiMortgage, Inc.*, 820 F.3d 1273, 1277 n.2 (11th Cir. 2016), *PNC Bank* controls the resolution of this case, and we therefore affirm the district court's grant of summary judgment to Ameris.

## B.    Ameris's Motion to Dismiss and Impose Sanctions

Ameris has moved for us to dismiss Defendants' appeal as frivolous and impose sanctions.  Rule 38 sanctions are "appropriately imposed against appellants

11

who raise 'clearly frivolous claims in the face of established law and clear facts.'" *Parker v. Am. Traffic Solutions, Inc.*, 835 F.3d 1363, 1371 (11th Cir. 2016) (quoting *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003)).

At the time that Defendants filed their opposition to summary judgment in the district court in 2015, the position they advanced had already been rejected by the Georgia Court of Appeals in *HWA Properties, Inc. v. Community & Southern Bank*, 322 Ga. App. 877 (2013). By the time that Defendants filed their present notice of appeal, on May 1, 2017, the Georgia Supreme Court had issued its decision in *PNC Bank, Nat'l Ass'n v. Smith*, 298 Ga 818 (2016), in which it expressed its agreement with the Georgia Court of Appeals' reasoning. If there was any lingering doubt that Defendants' position in this case was futile, the *PNC Bank* decision clearly removed that doubt, and did so more than a year before Defendants filed this appeal. In addition, multiple courts have issued decisions citing to and relying on *PNC Bank*. *See, e.g.*, *CertusBank, N.A. v. Dunwoody*, No. 5:14-CV-69 (LJA), 2016 WL 9087263 (M.D. Ga. Aug. 23, 2016); *York v. RES-GA LJY, LLC*, 336 Ga. App. 253 (2016), *aff'd* 300 Ga. 869 (2017); *Vance v. FD 2011-C1 Grove Rd. Ltd. P'Ship*, 340 Ga. App. 36 (2016); *Nine Twenty, LLC v. Bank of the Ozarks*, 337 Ga. App. 180 (2016). Accordingly, Defendants should have been

12

well aware that their appeal had no chance of success.  For this reason, we award Ameris costs and reasonable attorneys' fees incurred to defend this appeal.

As to whether Defendants' counsel should be held jointly responsible for these fees, we have previously held an appellant's attorneys jointly and severally liable for Rule 38 sanctions for, among other things, failing to bring to this Court's attention a decision from a state supreme court that plainly foreclosed any chance of the appeal's success until after the decision was addressed by the appellee.  *See Pelletier v. Zweifel*, 921 F.2d 1465, 1523 (11th Cir. 1991).  Defendants' attorneys did the same thing here.  They advanced a position clearly foreclosed by governing law and then failed to even mention the *PNC Bank* decision until after it had been discussed in Ameris's brief and motion for sanctions.  Accordingly, we hold that Defendants' attorneys are jointly and severally liable.  *See also Taiyo Corp. v. Sheraton Savannah Corp.*, 49 F.3d 1514 (11th Cir. 1995) (holding that a party and its appellate counsel were "jointly and severally liable" for costs and fees under Rule 38); *Romala Corp. v. United States*, 927 F.2d 1219, 1225 (Fed. Cir. 1991) (concluding that "[f]rivolity in argument is no doubt attributable at least as much to tactical decisions made by an attorney in writing briefs" and imposing joint and several liability on an appellant's attorneys).  The district court should establish these amounts on remand.

13

## <u>Conclusion</u>

The district court's grant of summary judgment in favor of Ameris is

**AFFIRMED**, and the case is **REMANDED** to the district court for further

proceedings to determine costs and reasonable attorneys' fees attributable to

Defendant's frivolous appeal pursuant to Rule 38.

14